DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:11-cr-0016 |
| ) | |
| JAMES STEPHENS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**APPEARANCES:**

**Gretchen C.F. Shappert, United States Attorney**
**Alessandra Parisi Serano, AUSA**
**Delia L. Smith, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
    *For the United States of America,*

**Jason Gonzalez-Delgado, Esq.**
Hato Rey, P.R.
    *For James Stephens.*

### MEMORANDUM OPINION

**MOLLOY, J.**

**BEFORE THE COURT** is the *pro se* Motion of James Stephens ("Stephens") to Reduce Sentence or for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A), filed September 8, 2020. (ECF No. 460.) The United States (the "Government") filed an opposition to the motion on September 22, 2020. (ECF No. 461.) Thereafter, the CJA counsel appointed by the Court to represent Stephens filed a supplemental motion on November 2, 2020. (ECF No. 466.) For the reasons stated below, the Court will grant Stephens' motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Stephens is a 66-year old African American male with Chronic Obstructive Pulmonary Disease ("COPD") and numerous other medical conditions. On April 5, 2012, a jury convicted Stephens of 1) conspiracy to possess with intent to distribute cocaine and marijuana; 2)

possession with intent to distribute cocaine; and 3) use of a communication facility to facilitate a drug crime, for his role in a drug trafficking operation from February to May of 2011.[1] Stephens was initially sentenced to a term of 180 months of incarceration to be followed by five years of supervised release. (ECF No. 377.) On October 8, 2015, the Court reduced Stephens' sentence of incarceration to 145 months pursuant to Amendment 782.[2] (ECF No. 430 at 2.) Stephens has currently served 115 months[3] (79%) of his amended sentence and is housed at FCI Coleman Low ("Coleman Low") in Sumterville, Florida. His projected release date is September 3, 2021,[4] with eligibility for home confinement on March 3, 2021. (Individualized Reentry Plan, Educ. Tr. at 5, ECF No. 460-5.)

Stephens sent a request for compassionate release to the Warden of Coleman Federal Correctional Complex ("FCC Coleman").[5] On June 11, 2020, the Warden at FCC Coleman denied Stephens' request for compassionate release/reduction in sentence "under Section 4, *Requests Based on Non-Medical Circumstances, Subsection b, Elderly Inmates with Medical*

---

[1] This crime—in which Stephens was charged with trafficking 453.59 grams each of cocaine and cocaine base—originally involved twelve named defendants. Nine were charged in this case (No. 3:11-cr-16); three were charged in individual, separate cases (3:11-cr-23, 3:11-cr-25, and 3:12-cr-07). In all, six defendants entered into plea agreements, another four went to trial and were adjudged guilty (one of whom was granted judgment of acquittal thereafter), and the charges against the remaining two defendants were dismissed. All who pled guilty have completed their term of imprisonment. Of the three found guilty in trial, two are still serving their sentence: Defendant Stephens and Defendant Jerome Potter. Stephens was ultimately sentenced to 145 months of incarceration, after the court reduced his sentence pursuant to Amendment 782 to the Federal Sentencing Guidelines. Stephens' offense level was based on the quantity of drugs he was charged with trafficking, with no additional enhancements for conduct. Defendant Potter, who was found to be the leader of the criminal activity, received significant enhancements in his sentencing and was originally sentenced to 292 months of incarceration, to be followed by 3 years of supervised release. His term of incarceration was reduced to 235 months (followed by supervised release) on October 8, 2015. Defendants Stephens and Potter remain incarcerated for their offenses.

[2] Effective November 1, 2014, Amendment 782 "revises the guidelines applicable to drug trafficking offenses by changing how the base offense levels in the Drug Quantity Table in § 2D1.1 [of the Federal Sentencing Guidelines] . . . incorporate the statutory mandatory minimum penalties for such offenses . . . while maintaining consistency with such penalties." *Reason for Amendment*, Amendment 782, U.S. Sentencing Guidelines Manual app. C § 782 (2018).

[3] Stephens has been in detention since his initial appearance on May 18, 2011. (ECF No. 467 at 1-2; ECF No. 467-1.)

[4] Stephens has served 93% of his projected term of imprisonment, based on his projected release date of September 3, 2021.

[5] Stephens does not specify the date on which he submitted his petition to the Warden. In its opposition, the United States (the "Government") asserts that Stephens' petition was filed on May 28, 2020. (ECF No. 461 at 2.)

*Conditions.*" (ECF No. 460-4.) In her denial, the Warden specifically acknowledges Stephens' medical conditions, including COPD, asthma, respiratory conditions, anemia, and hypertension but states,

> "[a]lthough you are elderly and diagnosed with multiple medical conditions . . . [y]ou are not completely disabled and totally confined to a bed or chair. . . . Based upon all the information gathered, you have not met the requirements outlined in the first stage of the Warden's review. Therefore, your request for consideration for a Compassionate Release . . . is denied."

*Id.*

On September 8, 2020, Stephens filed a *pro se* motion for "compassionate release, or alternatively, a reduction from the 145-month sentence this [C]ourt imposed." (ECF No. 460 at 1.) In his motion, Stephens asserts that he has COPD, asthma, respiratory conditions, and hypertension—in addition to anemia, peripheral neuropathy, esophageal reflux, knee and lower back pain, spinal stenosis, disorder of prostate, hyperglycemia, and Bell's Palsy.[6] *Id.* Stephens argues that he faces "health risks never foreseen by this [C]ourt," *id.*, because the Court's judgment "never contemplated 'execution by disease[,]' and should not now do so." *Id.* at 9. In addition, he cites a World Health Organization Report stating that 80% of COVID-related deaths are of individuals "near or over 60 with one or more underlying physical conditions." *Id.* at 8. Stephens includes medical records from the Bureau of Prisons (including reports from two chest x-rays that show "subpleural scarring at the lateral right upper lung" (ECF No. 460-2 at 18)) to confirm his diagnoses, medications, and multiple underlying conditions. Stephens thus argues that "[c]urrent prison conditions . . . are a life-threatening risk" for him that, when combined with his medical conditions and the current pandemic, present extraordinary and compelling reasons to warrant relief under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 460 at 12.)

---

[6] In addition, Stephens asserts that he "suffered calcific atherosclerosis associated with heart problems which caused him to suffer symptoms of a stroke this last August." ECF No. 466 at 2; *see also* ECF No. 460-1 at 9, 460-2 at 7, 11.

The Government filed an opposition to Stephens' motion for compassionate release on September 22, 2020. (ECF No. 461.) In its opposition, the Government acknowledges Stephens' "ailments such as anemia, peripheral neuropathy, hypertension, esophageal reflux, knee pain, low back pain, COPD, asthma, respiratory conditions, spinal stenosis, disorder of prostate, hyperglycemia and Bells Palsy," and affirms that "there ha[ve] been incidents of COVID-19 among staff and inmates" at Coleman Low, the facility where Stephens is housed. *Id.* at 2, 12. However, the Government concludes that because of "the non-fatal stages of his medical conditions" and the "quality of the medical treatment he receives at FCC Coleman," the Court should deny Stephens' motion for compassionate release. *Id.* at 12. The Government argues that the Bureau of Prisons ("BOP") is in the "best position[ ] to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations in light of an inmate's background and medical history and more general considerations regarding the conditions and needs at particular facilities." *Id.* at 9. Citing the U.S. Court of Appeals for the Third Circuit, the Government argues that "'the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.'" *Id.* (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

On October 2, 2020, the Court appointed CJA counsel, Attorney Jason Gonzalez-Delgado, to represent Stephens with respect to his motion for compassionate release. On November 2, 2020, counsel for Stephens filed a Supplemental Motion for Compassionate Release Under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (ECF No. 466.) In the supplemental motion, Stephens argues that the Warden failed to consider Mr. Stephens' age and the degree to which the combination of his medical conditions and age put him at increased risk of serious illness and death from exposure to COVID-19 while incarcerated.

Stephens contends that "[COVID-19] positive cases are increasing at an alarming rate." *Id.* at 3. Citing longitudinal data pulled from the BOP's COVID-19 website, Stephens asserts that "the BOP reported an increase of positive cases of 1,556 inmates and 237 staff in just over a week" in October. *Id.* at 4. In the supplemental motion, Stephens argues that data reported on the BOP website is "unclear and vague," because the numbers of positive

cases published "are those of open cases of confirmed lab results, not opened and closed cases," thereby "casting . . . doubt on its reliability." *Id.*

Stephens further argues that the plan BOP has implemented to ensure the safety of inmates takes account of only "symptomatic inmates, while 'social distancing' measures force inmates to be constantly together in confined spaces. Inmates are forced to gather in commissary, laundry, telephone, computer access, and share bathrooms, toilets, shower, sinks, and tables, not knowing which inmates are infected, are asymptomatic, and are dangerously spreading the virus." *Id.* at 5. Stephens asserts that "FCC Coleman is not following protocols and regulations, thus creating a dangerous environment for inmates, especially for Mr. Stephens." *Id.* at 7.

If released, Stephens affirms he will quarantine as required and will return to the Virgin Islands to live. *Id.* at 10-11.

## II. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582, a sentencing court has the authority to modify an imposed sentence under certain conditions. Section 3582 provides in pertinent part:

> (A) the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1).

Before a defendant may file a motion for compassionate release under Section 3582(c)(1)(A), either (1) the Bureau of Prisons ("BOP") must have had 30 days to consider the defendant's request that the BOP move for compassionate release on his behalf, or (2) the defendant must administratively exhaust an adverse decision by the BOP in response to that defendant's request within that time period. *See Raia*, 954 F.3d at 597.

Once a defendant has met the exhaustion requirement of Section 3582(c)(1)(A), "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction.'" *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). "But before granting compassionate release, a district court must 'consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable.'" *Id.* "Those factors include, among other things, 'the history and characteristics of the defendant' and 'the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[, and] . . . to afford adequate deterrence to criminal conduct.'" *Id.* at 330 (citations omitted).

The United States Sentencing Commission (the "USSC") has issued a policy statement addressing reduction of sentences under Section 3582(c)(1)(A). The policy statement provides that a court may reduce the term of imprisonment after considering the 18 U.S.C. § 3553(a) factors if the court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. Application Note 1 to the USSC policy statement sets forth several circumstances under which the USSC has determined "extraordinary and compelling reasons" exist. Such circumstances include certain medical, age-related, or family circumstances, and a catchall provision—where other extraordinary and compelling reasons exist in a defendant's case. U.S.S.G. § 1B1.13 cmt. n. 1(A)-(D).

The defendant bears the burden of demonstrating that he is entitled to a reduced sentence under 18 U.S.C. § 3582(c)(1). *Cf. United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

## III. DISCUSSION

### A. *Exhaustion of Administrative Remedies*

Stephens filed a request for compassionate release with the Warden of FCC Coleman.[7] On June 11, 2020, Stephens received a letter stating that his request was denied. (ECF No. 460-4.) Stephens filed the instant motion on September 8, 2020. (ECF No. 460.) Because the Warden has denied his request to move the Court for compassionate release, the Court finds that Stephens has satisfied Section 3582(c)(1)(A)'s exhaustion requirement. As such, the Court will consider the merits of Stephens' motion.

### B. *Extraordinary and Compelling Reasons*

COVID-19 is a highly transmissible and deadly disease which has claimed over 333,000 lives thus far in the United States, 172 of whom were federal inmates in BOP custody. To date, 19,225 inmates have been placed in home confinement (including those who have completed their sentence) since the issuance of Attorney General Barr's Memo dated March 26, 2020, entitled "Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic." (ECF No. 466-11.) Of the 19,225 BOP inmates so placed, 8,020 BOP inmates currently remain on home confinement. *Federal Bureau of Prisons COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/faq.jsp (last visited Dec. 28, 2020).

Significantly, the Centers for Disease Control and Prevention ("CDC") has identified *age* as the *primary* risk factor for severe illness or death from COVID-19. "[The CDC] states that [a]mong adults, the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. The CDC states that eight out of ten COVID-19 deaths reported in the United States have been adults sixty-five-years-old and older." *United States v. Brunetti*, No. 94-127-13, 2020 U.S. Dist. LEXIS 136053, at *11 (E.D. Pa. July 31, 2020) (internal quotations omitted); s*ee also United States v. Zukerman*, 451 F. Supp. 3d 329, 335 (S.D.N.Y. 2020) (reporting that recent data from the CDC indicates that the "fatality rate for individuals aged 65 to 84 could be as high as 11 percent."). Here, Stephens is 66 years old, putting him at an increased risk for severe illness and serious complications or death, should he contract

---

[7] In his motion, Stephens does not specify the date on which he submitted his petition to the Warden. In its opposition, the Government reports that Stephens' petition was filed on May 28, 2020. (ECF No. 461 at 2.)

COVID-19, based on his age alone, before any consideration of additional risk factors based on his underlying medical conditions.

In addition to age, the CDC has identified underlying conditions that increase the risk of severe illness or death from COVID-19—with Stephens' primary underlying condition of COPD among those in the highest risk category. *People with Certain Medical Conditions*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 28, 2020) ("Having COPD . . . is known to increase your risk of severe illness from COVID-19."); *United States v. Harris*, No. 15-40054-01-DDC, 2020 U.S. Dist. LEXIS 227604, at *17 (D. Kan. Dec. 4, 2020) ("Unlike asthma, COPD is on the CDC's list of conditions that put adults at increased risk of severe illness from the virus that causes COVID-19."). The CDC also lists numerous other conditions that might increase the risk of severe illness or death from COVID-19, among which are hypertension and asthma—two of Stephens' myriad medical conditions.

Advanced age, combined with serious underlying medical conditions that increase the likelihood of serious complications or death if the person contracts COVID-19, makes a person particularly vulnerable during the pandemic. *See United States v. McCarthy*, 453 F. Supp. 3d 520, 523, 525 (D. Conn. 2020) (concluding that "[e]ven a few weeks' delay carries the risk of catastrophic health consequences for [the defendant]" where the defendant was 65 years old and suffer[ed] from a host of medical ailments, including chronic obstructive pulmonary disease ('COPD') and asthma. . . ."); *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (granting compassionate release to the defendant "in the most susceptible age category (over 60 years of age)" with COPD and emphysema, the combination of which "make[s] her particularly vulnerable"); *see also Basank v. Decker*, 449 F. Supp. 3d 205, 211 (S.D.N.Y. 2020) ("The Court takes judicial notice that, for people of advanced age, with underlying health problems, or both, COVID-19 causes severe medical conditions and has increased lethality.").

Numerous courts have found that the "'combination of health and age factors that put a prisoner at a substantially higher risk due to COVID-19[,] along with a documented risk of the disease in the facility where the prisoner is incarcerated[,] may demonstrate extraordinary and compelling reasons to reduce the prisoner's sentence.'" *United States v.*

*Duford*, No. 18-cr-042-LM, 2020 U.S. Dist. LEXIS 113429, at *6 (D.N.H. June 30, 2020) (quoting *United States v. Bischoff*, 460 F. Supp. 3d 122, at *125 (D.N.H. 2020)); *United States v. Butler*, No. 10-612, 2020 U.S. Dist. LEXIS 163154, at *9 (E.D. Pa. Sept. 8, 2020) ("[T]he confirmed presence of COVID-19 at [the facility], despite the BOP's procedures to prevent transmission . . . , underscores the ongoing risk to inmates of contracting the virus.").

As of the date of this order, BOP statistics reveal that 1,208 COVID-19 tests are completed and 650 test results are still pending. Of the inmates at Coleman Low who have been tested, 266 have tested positive for COVID-19. While there are currently zero confirmed positive cases among the inmate population at Coleman Low, there are 23 active cases among its staff members. Further, COVID-19 has claimed the life of one inmate and one staff member at Coleman Low. *COVID-19 Cases: Full breakdown and additional details*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 28, 2020).

Citing the First Step Act, Stephens argues his incarceration in a facility that "has become infected with the COVID-19 virus," combined with his advanced age and underlying medical conditions, present an extraordinary and compelling circumstance which justifies compassionate release. (ECF No. 460 at 6). This Court finds that Stephens' medical conditions and advanced age, in light of the COVID-19 pandemic and presence of COVID-19 within the facility where Stephens is housed, satisfy the extraordinary and compelling prong of the Section 3582 analysis. *See United States v. Brooks*, No. 08-167, 2020 U.S. Dist. LEXIS 181187, at *8 ("[T]he fact that there have been cases [in the facility], when coupled with Defendant's serious health conditions, is enough to convince the Court that extraordinary and compelling reasons exist justifying relief pursuant to Section 3582(c)(1)(A).").

### C. Section 3553(a) Factors

Before granting compassionate release, the Court must determine whether the applicable sentencing factors under 18 U.S.C. § 3553(a) warrant a reduction.

#### i. The nature and circumstances of the offense

First, the need for Stephens' sentence to reflect the seriousness of his offense, on its own, requires careful consideration. Stephens was convicted of conspiracy to possess with intent to distribute cocaine and marijuana. This was not his first conviction, nor was it his first conviction on drug charges. Stephens is a repeat offender, and his convictions are for

serious offenses. Although his was not a crime of violence, as a highly addictive drug, cocaine has an immensely destructive impact on society. Due to the gravity of Stephens' offense, the Court imposed a sentence of more than twelve years of incarceration, followed by five years of supervised release. The Court concludes that the seriousness of Stephens' offense weighs against, but does not necessarily preclude, a reduction in sentence under this analysis.

### ii. The need for the sentence imposed and the length of time served in relation to the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

The second factor to consider—the sentence imposed and the length of time that Stephens has served in relation to his sentence—weighs strongly in favor of a reduction in sentence and compassionate release. *See Butler*, 2020 U.S. Dist. LEXIS 163154, at *9 ("[T]he length of time the defendant has already served is highly relevant to whether a reduced sentence will still sufficiently reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *see also Pawlowski*, 967 F.3d at 331 (concluding that the amount of time remaining to be served in an inmate's sentence is an appropriate consideration under 18 U.S.C. § 3553(a)).

As of this date, Stephens has served over nine years and seven months (115 months) in prison for drug trafficking. Of the 145-month term of imprisonment imposed by the Court, Stephens has served 79% of the sentence and 95% of the minimum sentence (121 months) in his guideline range of 121-150 months. The Court concludes that the time Stephens has served is adequate to reflect the seriousness of his offense, provide just punishment, and promote respect for the law. *See United States v. Somerville*, No. 2:12-cr-225-NR, 2020 U.S. Dist. LEXIS 93935 (W.D. Pa, May 29, 2020) (finding that "the severity of [the defendant's] crime has been adequately reflected in the eight years he has already served in prison."). *United States v. Juarez-Parra*, No. CR 11-0125 RB, 2020 U.S. Dist. LEXIS 173106, at *15-16 (D.N.M. Sept. 22, 2020) (granting compassionate release to a defendant with COPD and diabetes mellitus 2 who had served 80% of his 147-month sentence and finding "that the sentence he has served thus far is adequate under § 3553(a), particularly in the face of this novel pandemic"); *United States v. Nunez*, No. 17-58-1, 2020 U.S. Dist. LEXIS 159654, at *1-2,

*7 (E.D. Pa., Sept. 1, 2020) (finding that having served 67% of the imposed sentence weighed in favor of the defendant's compassionate release under COVID-19 conditions when the defendant also had a medical condition that was a significant risk factor for COVID).

The BOP has determined that Stephens' projected release date is September 3, 2021, in approximately eight (8) months. Furthermore, Stephens is eligible for home confinement on March 3, 2021, just over two (2) months from now. *Sentence Monitoring Computation Data as of 06-23-2020*, at 5 (ECF No. 460-5.). Significantly, Stephens has served the lion's share of his sentence. As such, the Court concludes that releasing him to home confinement at this time would not controvert the aims of sentencing. *See United States v. Davidson*, No. 2:16-cr-00139-2, 2020 U.S. Dist. LEXIS 150887, at *59-60 (W.D. Pa., Aug. 20, 2020) (holding that, in the case of a defendant with underlying medical conditions that present significant risk factors for COVID-19 and a "lengthy criminal history and a habit for recidivism, . . . changing the physical location of [the defendant's] confinement over the next five (5) months to the environment into which the BOP has already concluded he would then move is unlikely to diminish the impact of the overall sentence this [c]ourt originally imposed, and would not in the [c]ourt's judgment diminish the resulting sentence's ability to meet the § 3553(a) purposes of sentencing").

Moreover, Stephens' eligibility for home confinement in just over two months, and for release from prison in approximately eight months, minimizes any disparity between his sentence and that of others sentenced for similar offenses.[8] *Id.*; *United States v. Rodriguez*, 451 F. Supp. 3d 393, 407 (E.D. Pa. 2020) ("Because [the defendant] has served the vast majority of his [ ] sentence and is a year and a half away from release, granting his motion sufficiently minimizes sentence disparities between him and similarly situated defendants.").

After careful consideration of Stephens' criminal history, length of time served, proximity to designated release date, and medical conditions as significant risk factors for

---

[8] Because of Stephens' co-defendants' disparate levels of cooperation with law enforcement authorities and varying degrees of leadership in the crime, this Court does not find that his co-defendants are "similarly-situated" individuals for purposes of assessing parity in the analysis of 18 U.S.C. § 3553 factors. *See supra* text accompanying note 1.

COVID-19, the Court finds that the amount of time Stephens has served in prison and the proportion of time he has served in relation to his sentence weigh in favor of compassionate release and adequately reflect the seriousness of and just punishment for his offense.

### iii. *The need for the sentence imposed to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant*

Third, Stephens asserts that his good disciplinary record in prison[9] and the self-improvement programs he has completed while incarcerated, including the Reentry Orientation Program and the Drug Education and Drug Treatment programs, demonstrate his rehabilitation.[10] In addition, he has completed the Infectious Disease Class and the 10-week Small Business Class. (ECF No. 460-5.) Stephens reports that he "wants to serve as an advocate for young people who are at-risk of living a life of delinquency" once he returns to the community. (ECF No. 466 at 11.) Furthermore, Stephens contends that "he has no ties to his co-defendants nor to anything or anyone related to the street life that he has left behind." *Id.*

As to protecting the public, United States Sentencing Commission studies have found that recidivism declines with increasing age of release of federal offenders, with drug trafficking offenders over age 60 having a substantially lower re-arrest rate than their younger counterparts.[11] (ECF No. 466 at 9.) Studies show that only about 4% of inmates released over the age of 65 return to prison.[12] Furthermore, "older offenders have the lowest recidivism rate of any age [group] in U.S. prisons." *The High Costs of Low Risk: The Crisis of America's Aging Prison Population*, The Osborne Association (2018) at 11. Moreover, the USSC study shows that offenders with a base offense level between 32 and 43 who are released from prison after age 60 have the lowest re-arrest rate (13.6%) of any offenders. *The Effects of Aging on Recidivism Among Federal Offenders* at 25,

---

[9] Individualized Reentry Plan (ECF No. 460-5 at 2-3.)

[10] *Id.* at 2.

[11] United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders*, at 25, Fig. 19 (December 2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

[12] *At America's Expense: The Mass Incarceration of the Elderly*, American Civil Liberties Union (June 2012), www.aclu.org/files/assets/elderlyprisonreport_20120613_1.pdf.

https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders.

Here, Stephens is a 66-year old, drug-trafficking offender with a base offense level of 32, putting him at low risk for reoffending after release according to the U.S. Sentencing Commission's research study. Statistically, based solely on his age and type of offense and without factoring in Stephens' medical conditions, Stephens is highly unlikely to reoffend and endanger the public after release from prison. *See United States v. Aguilera-Quinjano*, No. 4:96-CR-00201-02, 2020 U.S. Dist. LEXIS 190853, 8 (October 15, 2020) ("[T]he Court notes that, although [the defendant's] criminal history is lengthy and serious, there likely is no longer a significant need to protect the public from his criminal behavior. . . . Simply by nature of [his] age and medical ailments, there is little possibility that he will again participate in an international criminal drug trafficking conspiracy."). The Court finds that the sentence Stephens served has afforded adequate deterrence to criminal conduct. Based on the above analysis, the Court finds that the Section 3553(a) factors weigh in favor of reducing Stephens' sentence.

The Court concludes that by transferring the final two months of incarceration to home confinement, the length of Stephens' sentence will remain sufficient, but not greater than necessary and will fulfill the original goals of sentencing. *See Davidson*, 2020 U.S. Dist. LEXIS 150887, at *62 ("[T]he original goals of sentencing can and will be carried out as [the defendant] serves the remainder of his in-custody sentence while in home confinement."); *see also United States v. Perez,* 451 F. Supp. 3d 288, 294 (S.D.N.Y. 2020) (holding that, with only weeks to go in his sentence, poor health, and the threat of a deadly pandemic "[t]he benefits of keeping him in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave").

### D. USSC Sentencing Guidelines Policy

According to USSC policy, there are four classifications of persons for whom the Director of the BOP may move the court for compassionate release: 1) defendants with certain medical conditions; 2) defendants 65 years of age or older with significant medical conditions, 3) defendants with certain relationships to persons who have died or are incapacitated, and 4) a "catchall" category as determined by the Director of the BOP. U.S.S.C.

§ 1B1.13(A). The medical conditions which qualify as "extraordinary and compelling reasons" for granting compassionate release are A) terminal illnesses; and B) serious physical or medical conditions, functional or cognitive impairments, or "deteriorating physical or mental health [due to] the aging process, [any of which] substantially diminish the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* The only qualifying circumstance relating to the age of a defendant that is listed in the USSC policy is a defendant who is at least 65 years of age, is experiencing "a serious deterioration in physical or mental health *because of the aging process*" and has "served at least 10 years or 75 percent of his or her term of imprisonment . . . ." U.S.S.C. § 1B1.13(B). (emphasis added). Here, Stephens is 66 years old, with serious medical conditions that put him at significant risk of serious illness or death and has served 95% of the minimum sentence in his guideline range.

### i. Applicability of the USSC Policy Following the First Step Act

On December 21, 2018, President Trump signed into law the First Step Act of 2018, expanding the process and use of Compassionate Release, including a new allowance for defendants to petition the courts directly after first exhausting administrative remedies. The Sentencing Guidelines and USSC policy statement on the implementation of Section 3582 lag behind, with no update since the First Step Act was passed into law.[13] Because the Sentencing Guidelines were last amended before the First Step Act, Section 1B1.13 of the Guidelines addresses only the assessment of compassionate release petitions by the Director of the BOP. Therefore, Section 1B1.13, wherein the USSC provides guidance as to the USSC policy for implementation of 18 U.S.C. § 3582, is not current. The BOP issued a policy statement on January 17, 2019, addressing the amendments to 18 U.S.C. § 3582 created by the First Step Act.[14] (ECF No. 466-9 at 6.) Significantly, the 2019 BOP policy includes "Other Elderly Inmates"—a new category that qualifies for compassionate release, with no medical

---

[13] The current USSC Guidelines incorporate amendments that are effective as of November 1, 2018. *Guidelines Manual 2018*, United States Sentencing Commission, whereas the First Step Act was signed into law on December 21, 2018. Pub. L. 115-391.

[14] *Compassionate Release/Reduction in Sentence Procedures for Implementation of 18 U.S.C.* §§ 3582 and 4205(g), U.S. Dep't of Justice Fed. Bureau of Prisons No. 5050.50, at 1 (Jan. 17, 2019).

conditions required. The only categorical qualifications for this category are "inmates age 65 or older who have served the greater of 10 years or 75% of the term of imprisonment to which the inmate was sentenced." *Id.*

Although § 3582(c)(1)(A)(ii) requires that "such a reduction [in sentence] is consistent with applicable policy statements issued by the Sentencing Commission," the lack of an amendment to the USSC policy regarding the First Step Act lessens the policy's applicability. *E.g. Rodriguez*, 451 F. Supp. 3d at 397-399 ("The Commission has not updated its policy statement to account for the changes imposed by the First Step Act, and the policy statement is now clearly outdated. The very first sentence of §1B1.13 constrains the entire policy statement to motions filed solely by the BOP."). Indeed, the majority view of the district courts is that the USSC policy statement provides useful guidance in the Section 3582 analysis, but the policy statement as written does not constrain the court in its analysis. *Id.*; *United States v. Pabon*, 458 F. Supp. 3d 296, 300-31 (E.D. Pa. 2020); *United States v. Beck,* 425 F. Supp. 3d 573 (M.D.N.C. 2019)). The Court agrees with the majority view and concludes that the Court is not confined to the analysis or categories within the USSC policy statement.

### *ii. Whether the Defendant Would Pose a Danger to the Safety of the Public*

Notably, the Government does not argue that Stephens presents a danger to society or is at risk of reoffending. Although drug trafficking is a serious crime, Stephens did not play a central or violent role in the conspiracy for which he was convicted. Moreover, Stephens is housed at a low security facility and his Individualized Reentry Plan of June 26, 2020, states that Stephens "ha[s] maintained clear conduct." (ECF No. 460-5, at 4.) The Court finds that that Stephens does not present a danger to the public.

### IV.  CONCLUSION

Stephens has demonstrated extraordinary and compelling reasons for this Court to consider his motion, and the Section 3553 factors weigh in favor of granting Stephens compassionate release. The BOP has assessed Stephens to be eligible for release to home confinement a mere two months from now—during which time Stephens would remain at grave risk if incarcerated under current and increasingly serious pandemic conditions given his particular vulnerability to respiratory illnesses such as COVID-19. His status as a senior citizen places him at even higher risk for serious complications or death from COVID—and

simultaneously makes Stephens statistically less likely to recidivate. Moreover, his underlying medical conditions of COPD, asthma, and hypertension increase his risk with COVID-19. For these reasons, the Court will grant Stephens' motion for a reduction in sentence.

The Court sentences Stephens to time served to be followed by five years of supervised release, with all of the conditions of supervised release that were imposed at sentencing. As an additional condition of supervised release, Stephens shall be placed in home confinement through the date of his projected release, September 3, 2021. Stephens must undergo a 14-day period of quarantine at Coleman Low prior to his release to home confinement, to commence immediately. An appropriate order follows.

**Dated:** December 28, 2020                   /s/  *Robert A. Molloy*
                                                **ROBERT A. MOLLOY**
                                                **District Judge**